TATE, Judge
(dissenting).
The simple question is whether the employee is disabled by residual pain, as the trial court held.
Prior to the accident, she could work without substantial pain. This was so, despite a spondylolisthesis (forward slip *255 page of a vertebra of the spinal column) and a latent arthritic condition. The medical evidence does not substantially dispute that these latent conditions could be aggravated into total disability through a trauma. See, e. g., Hebert v. Hartford Accident and Indemnity Co., La.App. 1st Cir., 88 So.2d 243 (spondylolisthesis) and Ceasar v. Calcasieu Paper Co., Inc., La.App. 1st Cir., 102 So.2d 314 (arthritis).
Here, it is undisputed that Mrs. Marie Lafleur, the employee, suffered an acute lumbrosacral sprain on November 6, 1968, and that she was disabled therefrom until April 8, 1969, some five months later.
The sole remaining question is whether, as she testifies, she suffers disabling pain after that date. At the trial of September IS, 1969, the trial court accepted the testimony of the employee and of numerous lay witnesses showing she indeed suffered pain. The court relied upon the testimony of her attending physician, Dr. Roderick Perron, who had treated this lady numerous times between April and the trial.
Dr. Perron testified to the causal relationship whereby an acute sprain aggravates a spondylolisthesis into a chronically disabled back. (This results from an additional slippage, causing additional strain on muscles in the area.) The doctor felt that the persistence of, and the complete consistency of her complaints as to spot and area of, pain corroborates to a large degree the patient’s subjective complaints of a painful back.
The majority disregards this substantial medical and lay testimony proving the disabling pain of the employee. This preponderant testimony was accepted by the trier of fact.
Instead, the majority accepts the testimony of two specialists who examined the claimant at the request of the insurer. These orthopedists saw the lady once each after April, 1969. (One of them had seen her one time before.) The majority also relies upon the testimony of a physician who did not see her after April 8, 1969. (This physician was her employer whose insurer is made defendant herein.)
I respectfully suggest that this appellate court gravely errs in rejecting the testimony of the attending physician and of all lay witnesses, and in substituting for the diagnosis of the attending physician (who saw the patient many, many times) the opinions of specialists who saw her once and of a physician who had last seen her at least five months before the trial.
Actually, no objective tests can verify whether or not this lady suffers disabling pain as she testifies. This appellate court, reading a cold record in its comfortable chambers, cannot possibly know whether or not the lady testified truthfully, and whether or not the diagnosis of her attending physician, based upon his extended treatment and observation of her, is correct. See, e. g., Profit v. Crescent Construction Co., La.App. 4th Cir., 232 So.2d 814.
In reversing, we violate the well-recognized jurisprudential rule that the finding of fact by a trial judge should not be overturned in the absence of manifest error, and that the trial court should be affirmed if there is evidence in the record sufficient to sustain it. In reversing, we likewise ignore the commonsensical and settled jurisprudential rule that the opinion of the attending physician is to be' given great weight and should not lightly be disregarded in favor of the opinions of specialists who examine the patient briefly and then only for the purpose of giving testimony in litigation.
I respectfully dissent from this reversal of the considered determination by our trial brother that this lady is disabled, based upon the preponderant medical and lay testimony.